The evidence reveals that on June 4, 1985, Investigator Ronald McCollum of the Lee County Sheriff's Department was dispatched to investigate complaints by neighbors of loud music coming from a residence on the Old Opelika Road in Lee County. When he arrived at the residence at approximately 8:00 p.m., he spoke to the apparent *Page 1316 
owner, who informed him that it was private property and that he did not have to turn the music down. After a discussion, the owner said he would turn the music down but he would just turn it back up again when the officer left. Investigator McCollum then informed him that he would return in 30 minutes to make sure that the music was still turned down.
When Investigator McCollum returned 30 minutes later he found that the driveway had been blocked by rolls of hogwire, which prevented him from pulling up the driveway to the house as he had done earlier. He then observed the appellant walking down the driveway towards his patrol vehicle. Investigator McCollum testified:
 "When he saw that I couldn't get up in the driveway he started laughing and he pointed his finger at me and made his lips, a kissing motion with mouth, and then he turned around and spreaded his butt cheeks and started pointed at his butt, and then turned around and started laughing at me. At this point I pulled up and moved the hogwire out of the driveway and pulled into the driveway. I didn't know Mr. Jenkins and I asked him — I think exactly what I said was, `Hey, Jack, what's your name?' He wouldn't tell me. He was argumentative because I was on private property. And then he put his hands on the back of a car that was in the driveway. At this time I was on my way to my patrol unit to get my handcuffs, and he was hollering to two friends that were in the driveway back behind this car, `Don't let me back you down in front of my friends, put me in jail.' And I arrested him for harassment and told him he was under arrest for harassment."
Appellant was thereafter tried and convicted for harassment under § 13A-11-8, Code of Alabama 1975, and was sentenced to a 90 day suspended sentence, 2 days in jail, and a $250 fine. Section 13A-11-8 reads, in pertinent part:
 "(a) Harassment. — (1) A person commits the crime of harassment if, with intent to harass, annoy or alarm another person, he:
 "a. Strikes, shoves, kicks or otherwise touches a person or subjects him to physical contact; or
 "b. Directs abusive or obscene language or makes an obscene gesture towards another person.
"(2) Harassment is a Class C misdemeanor."
From this conviction and sentence he now appeals, raising the following issues.
 I
He first contends that the trial court erred in sustaining the state's objection to the following question: "Mr. McCollum, how does the law read on harassment?" He contends on the authority of Johnson v. State, 42 Ala. App. 511, 169 So.2d 773
(1964), that the trial court erred to reversal in refusing to allow the arresting officer to testify to what the law was.
In the relevant portion of Johnson to which the appellant apparently refers, the court noted that "we use the so-called English rule of cross-examination. Any matter within the issues of the trial may be put to the witness even though this expands beyond his testimony in chief," 42 Ala. App. at 514,169 So.2d at 775. While this is a correct statement of the law in Alabama, see Trawick v. State, 431 So.2d 574 (Ala.Cr.App. 1983); Braswell v. State, 371 So.2d 992 (Ala.Cr.App. 1979), we find that it does not aid the appellant in this instance.
The jury is required to receive its understanding of the law from the trial court. Jones v. State, 33 Ala. App. 451,34 So.2d 483 (1948). The trial court correctly refused to allow Investigator McCollum to recite "how the law in Alabama reads" as to the offense of harassment. The law which applies to the case is not a matter of evidence to be proved by witnesses. The trial court instructs the jury as to what the law is and how it applies.
Furthermore, the latitude and extent of cross-examination is within the sound discretion of the trial judge and is not to be disturbed on appeal unless there is a clear *Page 1317 
abuse of discretion. Blackmon v. State, 449 So.2d 1264
(Ala.Cr.App. 1984); Coburn v. State, 424 So.2d 665 (Ala.Cr.App. 1982); James v. State, 366 So.2d 1155 (Ala.Cr.App. 1979). We find no such abuse of discretion by the trial court.
Accordingly, we find that the trial court did not err in sustaining the state's objection and refusing to allow Investigator McCollum to answer the question calling on him to recite the law on harassment in Alabama.
 II
Appellant contends that the record does not reflect that he made a knowing and intelligent waiver of his right to counsel.
In Zuck v. State of Alabama, 588 F.2d 436, at 440 (5th Cir.), cert. denied, 444 U.S. 833, 100 S.Ct. 63, 62 L.Ed.2d 42 (1979), the court stated:
 "[W]hile it is true that a defendant can waive his right to effective assistance of counsel, a waiver is valid only if it is knowingly and intelligently made. United States v. Alvarez [580 F.2d] at 1259-60 [(5th Cir. 1978)]; Gray v. Estelle, 574 F.2d 209, 213 (5th Cir. 1978), United States v. Garcia, 517 F.2d 272, 276 (5th Cir. 1975)."
Where waiver is knowingly and intelligently made the trial court cannot force the defendant to accept the aid and assistance of counsel. Minnifield v. State, 397 So.2d 189
(Ala.Cr.App.), cert. denied, 397 So.2d 195 (Ala. 1981); Farettav. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562
(1975).
The record in the instant case reveals no colloquy between the court and the appellant concerning his right to counsel. The state argues that, as in King v. State, 294 Ala. 762,314 So.2d 912 (1975), the record taken as a whole reveals that the appellant knowingly waived his right to counsel.
Upon a careful review of the record as a whole, however, we find that there is no evidence that the appellant in the instant case "knowingly and intelligently" waived his right to counsel. Instead, there are only two points in the record, one in the transcript and one in the minute entry, where the court mentions that the appellant elected to proceed without counsel. From these statements alone it is not possible to determine if the election was "knowingly and intelligently" made.
In order to establish a knowing, intelligent waiver by the defendant of his right to counsel without application of the "totality of the circumstances test," the record at the outset of the trial should establish three factors: 1) that the defendant was informed that he had the right to counsel, 2) that the defendant was informed that if he could not afford counsel the state would appoint counsel to represent him, and 3) an affirmative showing by the defendant that, understanding these rights, he still elects to proceed without counsel.
Due to the fact that the record fails to reveal a knowing and intelligent election by the appellant to waive his right to counsel, this case is due to be reversed and remanded for a new trial. Because we are remanding this case for a new trial, we will, at this time, forgo any discussion of the First Amendment issues raised by appellant concerning his actions which resulted in his arrest.
REVERSED AND REMANDED.
All the Judges concur. *Page 1318